21584. ARRINGTON *et al. v.* ROME HARDWARE COMPANY.

DECIDED FEBRUARY 16, 1932. REHEARING DENIED MARCH 2, 1932.

*Wright & Covington,* for plaintiffs in error.
*Barry Wright,* contra.

LUKE, J. Rome Hardware Company brought an action upon an open account against A. B. Arrington, Mrs. A. B. Arrington Sr., Allison Arrington, and the Arrington Buick Company, alleging that the defendants "heretofore did business as a partnership under the name of Arrington Buick Company," and "said defendants are indebted to . . petitioner in the sum of $387.30," with interest. Defendants filed their answer denying any indebtedness to the plaintiff, and also filed a special plea denying the existence of the alleged partnership. Upon the trial of these issues, after evidence had been introduced on behalf of both the parties, the court directed a verdict in favor of the plaintiff against A. B. Arrington and Mrs. A. B. Arrington Sr., and entered judgment thereon. Defendant's motion for a new trial was denied and exceptions were taken.

There was no conflict in the evidence as to the essential facts. A. B. Arrington Sr. conducted a business under the trade name of Arrington Buick Company. He died in 1918, intestate. His distributees were Mrs. A. B. Arrington Sr., A. B. Arrington, Allison

Arrington, Mrs. Josephine A. Smart, and J. L. Arrington. H. H. Arrington was appointed and qualified as administrator of the estate, and from 1918 to 1929 conducted the business of the Arrington Buick Company, apparently with the consent of the distributees. He made ex parte settlements with two of the distributees,—Mrs. Josephine A. Smart and J. L. Arrington,—and continued to conduct the business as heretofore. On May 2, 1929, he took receipts in full settlement with the remaining distributees, and thereafter A. B. Arrington conducted the business as manager until a corporation was formed on June 18, 1929, and the remaining assets of the business were transferred to the corporation in exchange for shares of its capital stock. The receipts mentioned acknowledge the delivery by H. H. Arrington to the two of the remaining distributees who were sui juris and to the guardian of the one who was a minor, of one-third undivided interests in certain real estate, and also "an undivided one-third interest in and to the business heretofore carried on in the city of Rome, Ga., under the name of Arrington Buick Company, including all notes, accounts, automobiles, automobile parts and accessories, shop equipment, office furniture, and all other assets of every kind and character connected with and belonging to and forming a part of said business, the same being accepted subject to all outstanding debts, obligations, and liabilities of said business or of the said H. H. Arrington, as administrator as aforesaid, incurred on account of or in connection with the conduct of said business, it being agreed that said debts and obligations as now existing are to be ·paid out of such assets." The open account upon which the action is founded consists of numerous small items, the first under date of September 1, 1928, and the last under date of June 1, 1930, all charged to "Arrington Buick Company."

From these facts counsel for the defendant in error argues that, as to the two distributees who were sui juris and capable of consenting to the conduct of the business by the administrator, a copartnership existed; and as evidence of the copartnership, those defendants, after giving receipts to the administrator, repooled the assets, and continued the business for a period of some seven weeks, and then converted the assets (which were taken subject to existing indebtedness incurred by the administrator) by exchanging them for shares of stock in the newly formed corporation.

It is manifest from the record that the administrator of the estate of A. B. Arrington, deceased, upon his own responsibility and at his own peril, conducted the business of the "Arrington Buick Company," from the time of his appointment and qualification until he made the ex parte settlements of May 2, 1929, and that during that period the principal part of the indebtedness was incurred. There is not a scintilla of evidence indicating that the administrator had any special arrangement with the distributees for the conduct of the business. It is true that those who were capable of doing so "consented and approved," and "recognized that an attempt to liquidate said business would result in a sacrifice of the value thereof;" but all that they consented to and approved of was that the time for closing the account of the administrator was to be extended; and this could not in any possible sense have operated to create a partnership between them. Under the statute (Civil Code of 1910, § 4012) an administrator, in the exercise of his discretion, may continue the business of his intestate until the expiration of the current year, but in any event, "up to the time of sale or distribution, the administrator must manage and dispose of the property of the estate for the best interest of the estate." There is not a particle of evidence to show that the creditor extended any credit either to A. B. Arrington personally, who was the manager of the business, or to Mrs. A. B. Arrington, who seems to have had no part whatever in conducting the business, as a supposed partner or otherwise; and it can not be fairly claimed that they had associated themselves together for the purpose of carrying on the business, or that they held themselves out to the public as copartners. True, there was a brief period between the execution of the later receipts and discharge of the administrator until the incorporation was effected, during which period the business was conducted by A. B. Arrington as before. But the testimony is that the charter was applied for immediately after the receipts were executed, and in any event what was done by the parties here after the major portion of the indebtedness was incurred could not have a retroactive effect and relate back to the time when the principal indebtedness was incurred. It is evident that the trial judge directed the verdict for the plaintiff on the theory that the existence of a copartnership was established by the evidence; otherwise no such verdict as we

find here could have been awarded. This was error; and the motion for a new trial should have been sustained.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*